# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:04CV518-H

| | |
|---|---|
| KIMBERLY HOYLE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   **MEMORANDUM AND ORDER** |
| | ) |
| UNITED AUTO WORKERS LOCAL | ) |
| UNION 5285, and THE | ) |
| INTERNATIONAL UNION UAW, | ) |
| | ) |
|     Defendants. | ) |

**THIS MATTER** is before the Court on the following motions and memoranda:

1. Defendant "UAW International's Motion for Summary Judgment" and "Brief in Support . . ." (document #21), both filed May 9, 2006;

2. Defendant "Local 5285's Motion for Summary Judgment" and ". . . Brief in Support . . ." (document #22), both filed May 9, 2006;

3. Supporting attachments also filed by both of the Defendants (documents ##23-25) on May 9, 2006;

4. Plaintiff Kimberly Hoyle's ". . . Brief in Opposition to Defendant UAW International's and UAW Local 5285's Motions for Summary Judgment" and attachments (document #26) filed June 15, 2006;

5. Defendants "Local 5285's and UAW International's Reply Brief . . ." (document #27); and attachments (document #28) filed June 30, 2006;

6. Defendants' ". . . Motion to Strike" (document #29) filed June 30, 2006;

7. Plaintiff's ". . . Response to Union Defendants' Motion to Strike" (document #32) filed July 24, 2006; and

8. Defendants' ". . . Reply Brief in Support of Motion to Strike" (document #33) filed August 3, 2006.

The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are now ripe for determination.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>grant</u> the Defendants' Motions for Summary Judgment, but <u>deny</u> the Defendants' Motion to Strike, as discussed below.

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

This action seeks damages and equitable relief for gender-based discrimination, retaliation, and a hostile work environment in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e ("Title VII") and state public policy, and also asserts a state law claim for intentional infliction of emotional distress.

### A. <u>Factual Background and Findings</u>

After an organizing campaign by UAW International, Freightliner Corporation entered into its first Collective Bargaining Agreement ("CBA") in 1991. Thereafter, a new CBA has been negotiated and entered into between Freightliner and "Local 5285" every three years. The CBA governs many aspects of employment for hourly workers, including wages, benefits, and handling of grievances. The CBA also requires Freightliner to pay the wages of certain of Local 5285's representatives, including the union's "Health and Safety Representative," although Freightliner

retains the authority to discipline employees whose wages it pays and to approve any requests for leave. (It is specifically noted that Freightliner is <u>not</u> a party to this action.)

### 1. **Health and Safety Representative**

The Health and Safety Representative position was created and governed by the CBA, including the hours, shift, and compensation. The first four CBA's differed on whether the Health and Safety position was elected by Local 5285 members or appointed by its leadership. However, in the fifth CBA, governing employment years 2003 through 2006, appointment became the sole method of selecting the Health and Safety Representative. According to the Defendants, this brought Local 5285 in line with UAW International's position on how Health and Safety Representatives should be selected and with the practice of other "locals." The rationale supporting appointment (versus election) was that a Health and Safety Representative should be experienced and appointing the Representative would eliminate the potential of having to train an inexperienced Representative after an election. The Plaintiff has conceded that she agreed with this rationale as initially explained to her by UAW International Health and Safety Representative Jim Howe.

The Health and Safety position requires significant experience and/or training. In addition, the Representative attends regular safety committee meetings, monthly safety meetings with Freightliner personnel, and investigates all matters related to accidents and safety issues raised by employees. The Representative also works closely with the Freightliner Health and Safety supervisor to determine what actions, if any, should be taken to correct potential safety hazards.

The Plaintiff held the elected position of Health and Safety Representative from July 2001 to September 2003. Per the CBA then in effect, Freightliner paid the Plaintiff's wages in this elected position, although her work station was located in an office at the plant that was designated for the

exclusive use of Local 5285. Brent Marr, Local 5285 President, avers that he was unhappy with the Plaintiff's job performance because she was frequently absent, failed to give him proper notice of her absences, on occasion worked the second shift without notifying him, engaged in nepotism by selecting her husband as her alternate, and was generally the subject of a number of complaints.

After the Health and Safety Representative position became an appointed one under the 2003 CBA, the Plaintiff and seven others applied. Local 5285 President Brent Marr recommended Ken Carriker, who had served as an alternate Benefits Representative and as an alternate Committeeman with Local 5285, for the position. Mr. Carriker also had experience as a volunteer fireman, with hazardous waste materials, robotics training, and had a far better attendance record than did the Plaintiff. At some point in the selection process Mr. Marr's recommendation was forwarded to a regional office where it was approved, and then to UAW International. At UAW International, the Carriker recommendation was accepted, apparently somewhat based on personal knowledge of UAW International representatives of the Plaintiff's absenteeism during the most recent CBA bargaining sessions.

## 2. UAW International and Local 5285

Local 5285 is a small chapter of UAW International, with fewer than fifteen employees. As noted, Freightliner pays the wages and benefits of Local 5285 representatives, can discipline them, and approves their requests for leave. However, Local 5285 controls the selection of employees, job descriptions, and the substantive carrying out of employment duties and responsibilities. Local 5285 also elects its own officers and agents, determines qualifications for membership, sets its own dues and membership fees, manages its own funds and assets, and votes on whether to adopt proposed

4

CBA's. However, Local 5285 does pay fees and give a periodic financial statement to UAW International. Additionally, UAW International provides training for the Health and Safety Representative, although the expense of week-long training sessions is paid for by Local 5285.

### 3. Incidents of Gender Discrimination

The Plaintiff's complaints of sexually offensive behavior and comments in the Local 5285 office are:

- After the adoption of the 2003 CBA, Mr. Marr remarked that Ronnie Melton had said that the problem with the Plaintiff is that she should have been sleeping with the president instead of the vice-president (her husband).

- In April or May of 2003, Clark Riddle, a union representative, told the Plaintiff that women "ain't good for nothing but one thing and you know what that is."

- Clark Riddle remarked that another female in the union did not know how to do her job and only continued to get in offices because of the mini-skirts she wore.

- Clark Riddle remarked that an African-American woman did not know how to do her job because she was a "two in one," apparently referring to her gender and race.

- Clark Riddle remarked that Madeline Griffith, a maintenance supervisor, did not know how to do her job and was just another number.

- During the latter part of 2002 and afterwards, co-workers used the words "pussy" and "fuck" in jokes told in the Local 5285 office.

- In January 2003, Tim Bridges, Benefits Representative, told a joke to Clark Riddle, Terry Cole, and Ken Carriker comparing a woman to a doormat, indicating that they

needed to be taken out and beaten every once in awhile.

- In the Summer of 2002, Tim Bridges brought in penis-shaped candy and "egged [the Plaintiff] on until she tasted one."

- In early 2002, Greg Nolen told the Plaintiff that she was looking good, a little perky, and that she had her headlights on. The Plaintiff was so embarrassed by this that she began wearing a welding jacket at work.

- There were ongoing instances of men telling sexual jokes and looking at sexually explicit materials on the computer in the Local 5285 office.

- In 2002, the Plaintiff saw part of a woman's leg on a computer screen in the Local 5285 office when several men were gathered around it.

- Around the time of the 2003 CBA negotiations the Plaintiff was made to feel uncomfortable by looks she received from Scott Fortenberry, and she was present when he told dirty jokes to some of the other union alternates.

- Ken Carriker made an obscene joke and apologized to the Plaintiff when he realized she was in the office.

- In June 2004, a can of "penis enlargement spray" was left in the Local 5285 office.

- The Plaintiff observed Steve Ellis looking at a naked woman on the computer screen in the Local 5285 office.

- The Plaintiff was not allowed to select her alternate, even though a similarly situated male was allowed to do so.

- Mr. Marr "interfered with [the Plaintiff] doing her job, overrode her discussions,

subjected her comings and goings to scrutiny, communicated critical information to management before telling [the Plaintiff] and excluded her from meetings."

- Mr. Marr failed to take action to rid the Local 5285 office of the sexually objectionable material in a prompt and timely manner.

### 4. Attempts at an Internal Union Remedy

Prior to the 2003 CBA negotiations, the Plaintiff discussed with Jim Howe, UAW International Health and Safety Representative, her concerns that Mr. Marr did not want women in the Local 5285 office. After she was not appointed to the Health and Safety position, in September 2003, the Plaintiff completed the first step in the union complaint process and filed a complaint with the Civil Rights Committee Chairperson, Ricky McDowell. The Plaintiff expressed her concern that although she was the best qualified person for the position, Mr. Marr had chosen someone else because she believed he did not want women in positions of power. At this time the Plaintiff also complained about her experiences in the Local 5285 office with offensive jokes, images, and co-worker behavior.[1]

Rather than attempting to resolve the complaint at the local level, Mr. Marr initiated an appeal to the UAW International Executive Board, which rendered a decision against the Plaintiff on August 17, 2004. However, the Plaintiff did not appeal this decision to the Public Review Board or the Convention Appeals Committee before filing this action, which appeal would have completely exhausted her internal remedies with UAW International.

---

[1] The Plaintiff also complained to Ricky McDowell in 2002 about inappropriate behavior in the Local 5285 office, but chose not to file a formal complaint at that time.

B. **Procedural Background**

On both November 10, 2003 and March 5, 2004, the Plaintiff filed administrative Charge(s) of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

On October 8, 2004, the Plaintiff filed a timely Complaint in this Court alleging claims for gender-based discrimination, retaliation, and hostile work environment in violation of Title VII and state public policy, and a state law claim for intentional infliction of emotional distress.

On May 9, 2006, both of the Defendants filed Motions for Summary Judgment, which have been fully briefed as set forth above, and are now ripe for determination.

On June 30, 2006, the Defendants filed a Motion to Strike portions of the Plaintiff's affidavit and attachments which the Defendants assert are not properly authenticated. The subject evidence is not material to the ultimate outcome, and accordingly the Defendants' Motion to Strike will be denied.

## II. DISCUSSION OF CLAIMS

A. **Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted when the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." See also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Once the movant has met its burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict

for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment. Id. at 249-50.

When considering summary judgment motions, courts must view the facts and the inferences therefrom in the light most favorable to the party opposing the motion. Id. at 255; Miltier v. Beorn, 896 F.2d 848, 850 (4th Cir. 1990); Cole v. Cole, 633 F.2d 1083, 1089 (4th Cir. 1980). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted).

### B. Service of Process as to the Defendant UAW International

UAW International first asserts that it should be dismissed from this action because it was served improperly. Specifically, the Defendant asserts that the Plaintiff attempted to serve process by mailing the summons and complaint to the Local 5285 office address, and that an officer of Local 5285 (realizing the mistake) delivered it to UAW International. UAW International argues that service was invalid as a matter of law because it had not authorized Local 5285 or any of its officers, agents, representatives, or members to accept service of process on its behalf.

UAW International first asserted this defense in its Answer, which was filed March 3, 2005. Specifically, the Fourteenth Defense states that "[s]ervice of process on UAW International was defective, in that no authorized agent for UAW International has received process to date."

Under Federal Rule of Civil Procedure 12(h)(1), "[a] defense of . . . insufficiency of process, or insufficiency of service of process is waived . . . if it is neither made by motion under this rule nor

included in a responsive pleading." Accordingly, even though UAW International waited until it filed its Motion for Summary Judgment to argue for dismissal based on ineffective service of process, that defense <u>was</u> preserved by virtue of its Answer. Moreover, as discussed below, the burden of effecting proper service is on the Plaintiff, and despite having notice both that the service was improper and that UAW International intended to require proper service, the Plaintiff did not elect to re-serve the summons and complaint in a legally sufficient manner.

Federal law provides that "[s]ervice may be effected by a person who is not a party and who is at least 18 years of age." Fed. R. Civ. P. 4(c)(2). More specifically, the federal rule provides that service may be effected "pursuant to the law of the state in which the district court is located, or in which service is effected." Fed. R. Civ. P. 4(e)(1).

The North Carolina Rules of Civil Procedure provide for service of process on an organization such as UAW International as follows:

> (j) Process – Manner of service to exercise personal jurisdiction. – In any action commenced in a court of this State having jurisdiction of the subject matter and grounds for personal jurisdiction as provided in G.S. 1-75.4, the manner of service of process within or without the State shall be as follows:
>
> . . .
>
> (8) Other Unincorporated Associations and Their Officers. – Upon any unincorporated association, organization, or society other than a partnership by one of the following:
>
> > a. By delivering a copy of the summons and of the complaint to an officer, director, managing agent or member of the governing body of the unincorporated association, organization or society, or by leaving copies thereof in the office of such officer, director, managing agent or member of the governing body

       with the person who is apparently in charge of the office.

    b. By delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to be served or to accept service of process or by serving process upon such agent or the party in a manner specified by any statute.

    c. By mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the officer, director, agent or member of the governing body to be served as specified in paragraphs a and b.

    d. By depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the officer, director, agent, or member of the governing body to be served as specified in paragraphs a. and b., delivering to the addressee, and obtaining a delivery receipt.

N.C. R. Civ. P. 4(j)(8).

  Because the Plaintiff mailed the summons and complaint to the wrong address, that is, not to an agent authorized by appointment or by law, or to an officer, director, agent or member of UAW International's governing body, service was clearly and plainly improper. Indeed, the Plaintiff concedes that neither Local 5285, or its officers or employees, are authorized to accept service of process on behalf of UAW International.

  North Carolina law requires strict compliance with the service of process statutes, even where it is clear, as here, that a defendant has received actual notice of the action. See, e.g., Philpott v. Kerns, 285 N.C. 225, 228, 203 S.E.2d 778, 780 (1974) (actual notice not a substitute for valid service in accordance with the statute); Stack v. Union Reg'l Mem'l Med. Ctr., Inc., 171 N.C. App.

322, 328, 614 S.E.2d 378, 382 (2005) (same); Greenup v. Register, 104 N.C. App. 618, 620, 410 S.E.2d 398, 400 (1991) (service of process statute "must be construed strictly and the prescribed procedure must be followed strictly"); and Roshelli v. Sperry, 57 N.C. App. 305, 307, 291 S.E.2d 355, 356 (1982) (service invalid if not issued and served in the manner prescribed by statute, even where the defendant had actual notice).

The Plaintiff attempts to avoid this clear and unequivocal rule by arguing that even though it did not effect valid service of process on UAW International, service was proper when the Local 5285 representative delivered the summons and complaint to UAW International (reasoning that a person who is not a party and is at least eighteen years of age may effect service of process on UAW International). The Plaintiff cites no law to support her novel argument that an employee or member of one codefendant can serve another codefendant, nor is the undersigned aware of any such authority. In any event, however, this argument is clearly erroneous if the Local 5285 representative who delivered the summons and complaint to UAW International is a party to the lawsuit.

The Plaintiff and the Defendants agree that it was either Bob Riggins, at that time serving as President and Shop Chairman of Local 5285, or Denise Welch, Local 5285 Financial Secretary, who delivered the summons and complaint to UAW International. Neither of these individuals have been named in this lawsuit. However, they are both clearly officers or managers of Local 5285 who would have legal authority to speak for and bind the organization. Thus, the North Carolina Rules of Professional Conduct would not allow the Plaintiff's counsel to communicate with either Mr. Riggins or Ms. Welch because of their status as officers of a codefendant. See N.C. Rule of Prof'l Conduct 4.2; and United States v. Joseph Binder Schweizer Emblem Co., 167 F. Supp. 2d 862, 865

(E.D.N.C. 2001) (Rule 4.2 prohibits communication with managerial employees of a represented organization). By analogy to the present facts, it would be wholly inconsistent to find that the Plaintiff's counsel could not make contact with these Local 5285 representatives, but could rely on them to cure the defective service of process.

The Plaintiff also argues that UAW International should be deemed served because it has failed to show that it has "suffered any prejudice as a result of the difficulties with the service of process" (emphasis added). For this proposition the Plaintiff cites a case holding that a "corporate defendant that fails to receive *actual* notice of a claim against it suffers no due process violations so long as the notice given was of a nature reasonably calculated to provide actual notice and an opportunity to defend." Plant Genetic Systems, N.V. v. CIBA Seeds, 933 F. Supp. 519, 526-27 (M.D.N.C. 1996) (emphasis in original). However, there are two distinguishing factors in this case: first, UAW International is not a corporate defendant; and second, the plaintiff in Plant Genetic Systems corrected service within three months of filing its complaint. Id.

To understand the rationale behind the rule in Plant Genetic Systems more completely, it is instructive to consider the case it cites for this principle, Capstar Corp. v. Pristine Indus., Inc., 768 F. Supp. 518, 521 (W.D.N.C. 1991). In Capstar, although it was apparent that proper service had not given the defendant actual notice of the lawsuit because the signature on the certified mail receipt bore no resemblance to the signature of any of the defendant's agents, the Court held that there was "no due process violation so long as the notice given was of a nature reasonably calculated to provide actual notice and an opportunity to defend." Id. Put simply, this is a very different situation than that presented in this case where service of process was clearly improper under any reasonable

reading or interpretation of the rule.

The only remaining way to deem service proper would be to find Local 5285 a mere agent of UAW International, and thus to conclude that serving Local 5285 would ipso facto constitute serving UAW International. If Local 5285 and UAW International are autonomous entities, however, then "service of process on the one is not valid service on the other." Isbrandtsen Co., Inc. v. Nat'l Marine Eng'r Beneficial Ass'n, 9 F.R.D. 541, 544 (S.D.N.Y. 1949) (local union is an autonomous entity where national union's constitution does not create agency relationship with local union, the local existed by reason of a charter granted by the national union, and where local union held its money, property, and other assets and interests in its own name even if its charter were revoked).

Many federal courts have made factual determinations on the issue of whether international and local unions are distinct entities by examining the relationship between the two. See, e.g., United Mine Workers v. Coronado Coal Co., 259 U.S. 344, 395 (1922) (holding it a question of "actual agency" as to whether international union could be held responsible for actions of local union, ultimately concluding that international union was not liable where it did not interfere in strike or otherwise assume liability by ratification); Morgan Drive Away, Inc. v. Int'l Brotherhood of Teamsters, 268 F.2d 871, 876 (7th Cir. 1959) (concluding that local and national unions were autonomous entities); and Bacino v. American Fed'n of Musicians, 407 F. Supp. 548, 544 (N.D. Ill. 1976) (noting that after Coronado cases "the law has recognized that affiliates of a national or international labor organization are not presumed by the mere fact of their affiliation to be agents of the latter," and that "whether a local is an agent requires balancing the matters left to the control and

discretion of the Local against [that] which remain[s] under the [national's] control . . . total separation is not required [to avoid a finding of agency] . . . [but there must be] a significant degree of autonomy in [the Local's] management, finances, and business affairs . . .").

Applying these principles in this case, it is perhaps most significant that UAW International's constitution specifically prohibits, absent written authority, any local officer to act as its agent. There is clearly no such written authority in this case. Further, Local 5285 maintains its own bank accounts, manages its own real and personal property, elects its own officers, has procedures to handle its own disciplinary problems, and has final approval over its negotiated CBA's. On the other hand, UAW International retains final approval over Local 5285's bylaws (to ensure national conformity), presides over the appellate process when the Local 5285's disciplinary procedures do not resolve an issue, must ultimately approve Local 5285 recommendations for appointed representatives, and assists in the triennial CBA negotiations (although it is the Local 5285 membership which ultimately decides whether to adopt the CBA).

Viewing these various rights and responsibilities in their totality, the only reasonable conclusion is that UAW International does not control Local 5285, but rather provides guidance on certain of the more "global" policies and issues. Conversely, apart from this periodic involvement and guidance, it is equally clear that Local 5285 essentially controls and manages its own affairs.

In summary, because Local 5285 is not a mere agent of UAW International and therefore would not be authorized to accept service of process on its behalf, UAW International has never been properly served. Accordingly, summary judgment must and will be granted on this procedural issue standing alone.

### C. Employer Status Under Title VII

Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . ." 42 U.S.C. § 2000e(b). The Plaintiff must prove this numerical threshold as an element of her claim. See Arbaugh v. Y & H Corp., 126 S. Ct. 1235, 1238-39 (2006).

The Plaintiff does not contend that Local 5285 has fifteen employees. Rather, the Plaintiff argues that Local 5285 and UAW International are so interrelated that their respective employees should be combined. This argument fails for the reasons stated in the preceding section; however, it is further noted that UAW International will be dismissed from this action for the reasons also stated therein. Nor, as the Defendants' argue would the Plaintiff have met this element if UAW International <u>had</u> been served properly in that the two defendants are two distinct, autonomous entities which could not be joined for purposes of service of process <u>or</u> to satisfy the number of employees requirement.[2] Accordingly, summary judgment must and will also be granted as to the Plaintiff's Title VII claims.

### D. State Public Policy

The Plaintiff has also asserted that the alleged discrimination violated North Carolina public policy as codified in North Carolina General Statute §143-422.2. This statute provides that:

[i]t is the public policy of this State to protect and safeguard the right and opportunity

---

[2]In addition, because UAW International and Local 5285 are sufficiently autonomous to avoid liability as a single employer, even without the service of process issue the claims against UAW International could not have survived the instant motion. None of the discriminatory acts alleged by the Plaintiff involve UAW International. In fact, UAW International's only involvement with this case is the fact that it approved Mr. Marr's recommendation of Mr. Carriker for the Health and Safety position. However, even as to this act the Plaintiff does not allege that her gender had anything to do with UAW International's decision.

16

of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ <u>15 or more employees</u>.

N.C. Gen. Stat. § 143-422.2 (emphasis added).

The Plaintiff being unable to establish the requisite number of employees (as set forth above), summary judgment on her State public policy claims must and will also be granted.

### E. Intentional Infliction of Emotional Distress

In North Carolina, to state a claim for intentional infliction of emotional distress a plaintiff must show: (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress of another. <u>See, e.g.,</u> <u>Thomas v. Northern Telecom, Inc.</u>, 157 F. Supp. 2d 627, 634-35 (M.D.N.C. 2000); <u>Dickens v. Puryear</u>, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981); <u>and</u> <u>Simmons v. Chemol Corp.</u>, 137 N.C. Ct. App. 319, 325, 528 S.E.2d 368, 371 (2000).

North Carolina law establishes a stringent standard that permits liability to be imposed only where the conduct at issue is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Hogan v. Forsyth Country Club</u>, 79 N.C. App. 483, 493-94, 340 S.E.2d 116, 123 (1986). Whether the conduct alleged meets this stringent standard is a question of law for the court, not a question of fact for the jury. <u>Id.</u> 79 N.C. App. at 490, 340 S.E.2d at 121. Accord <u>Wagoner v. Elkin City Schools' Bd. of Educ.</u>, 113 N.C. App. 579, 586, 440 S.E.2d 119, 123; <u>Johnson v. Bollinger</u>, 86 N.C. App. 1, 11, 356 S.E.2d 378, 381 (1987); <u>and</u> <u>Briggs v. Rosenthal</u>, 73 N.C. App. 672, 676, 327 S.E.2d 308, 311(1985). Furthermore, "in employment actions, North Carolina courts have been reluctant to find intentional infliction of emotional distress claims actionable." <u>Frazier

17

v. First Union Nat. Bank, 747 F. Supp. 1540, 1553 (W.D.N.C. 1990).

In cases where North Carolina courts have found intentional infliction of emotional distress, the conduct has been extremely egregious, far beyond the factual allegations in this case. For example, in Hogan, the single successful plaintiff alleged that in addition to using profanity and threatening her, defendant's agent made sexually suggestive remarks, coaxed her to have sex with him, subjected her to non-consensual sexual touching, threatened her with bodily injury, and ultimately threatened her with a knife. 79 N.C. App. at 490, 340 S.E.2d at 121. Nothing remotely analogous to this kind of extreme conduct occurred in this case.

Applying these principles to the allegations in this case, the Plaintiff has clearly failed to state a claim for intentional infliction of emotional distress. Accordingly, the motions for summary judgment must and shall be granted on this final claim as well.

### III. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. The Defendants UAW International and Local 5285's Motion to Strike (document #29) is **DENIED**.

2. The Defendants UAW International and Local 5285's Motions for Summary Judgment (documents ##21-22) are **GRANTED** and the Complaint is **DISMISSED WITH PREJUDICE.**

3. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED, AND DECREED.**

Signed: August 3, 2006

*Carl Horn, III*
---

Carl Horn, III
United States Magistrate Judge